UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| JAC-LYNN TVETER,<br><br>Plaintiff,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Defendant. | 5:26-CV-05009-KES<br><br>ORDER GRANTING PLAINTIFF'S FIRST MOTION TO AMEND, DENYING PLAINTIFF'S SECOND MOTION TO AMEND, AND GRANTING DEFENDANT'S MOTION TO DISMISS |

Defendant, State Farm Mutual Automobile Insurance Company, filed two motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Docket 7; Docket 13. Plaintiff, Jac-Lynn Tveter, opposes the second motion. Docket 17. Tveter filed two motions to amend her complaint. Docket 9; Docket 15. State Farm opposes the second motion. Docket 20.

**FACTUAL BACKGROUND**

Tveter alleges the following:

On August 29, 2021, Tveter, her then-husband, Danny Stefka, and two other riders were riding motorcycles in Fall River County, South Dakota. Docket 10 ¶¶ 8-9, 12. Tveter was riding a 2015 Harley-Davidson three-wheel motorcycle that she co-owned with Laurie Soper. *Id.* ¶ 19. Stefka was riding a 2018 Harley-Davidson three-wheel motorcycle with a two-wheel trailer owned solely by him. *Id.* ¶¶ 10, 13. Stefka's motorcycle came into contact with the back of Tveter's motorcycle, causing Tveter to fall off of her motorcycle and roll backwards. *Id.* ¶¶ 14, 17. Tveter was transported to the hospital by ambulance,

where she presented with head, rib, back, heel, abdomen, arm, and elbow injuries. *Id.* ¶¶ 15, 21.

Fall River Health Services Hospital billed $17,241 for medical treatment provided to Tveter on the day of the accident. *Id.* ¶ 23; Docket 10-15. Tveter also received an ambulance bill from Hot Springs Ambulance Service for $1,869. Docket 10 ¶ 24; Docket 10-16. Regional West Garden County Hospital billed $11,694 for medical treatment provided to Tveter on September 9, 2021. Docket 10 ¶ 25; Docket 10-17.

The 2015 motorcycle Tveter was riding at the time of the accident was insured through Progressive Insurance policy number 940158209 (the Progressive Policy). Docket 10 ¶ 19. The Progressive Policy listed both Soper and Tveter as named insured drivers. Docket 10-12 at 1. The Progressive Policy had liability limits of $25,000 each person and $50,000 each accident for bodily injury liability and $25,000 each accident for property damage liability. Docket 10 ¶ 20; Docket 10-12 at 2. The Progressive Policy also had uninsured motorist (UM) coverage and underinsured motorist (UIM) coverage of $25,000 each person and $50,000 each accident. Docket 10 ¶ 20; Docket 10-12 at 2. Additionally, the Progressive Policy provided comprehensive coverage, collision coverage, and accessory coverage. Docket 10 ¶ 20; Docket 10-12 at 2. Progressive paid Harley-Davidson a total of $8,218.16 to repair the 2015 motorcycle after the accident. Docket 10 ¶ 29.

The 2018 motorcycle driven by Stefka was insured through State Farm policy number 118 5556-D20-27B (State Farm Policy A). *Id.* ¶ 51; Docket 10-31

at 2. State Farm Policy A listed both Stefka and Tveter as named insured drivers. Docket 10 ¶ 66; Docket 10-31 at 1. Tveter was also a named insured driver on State Farm policy number 092 2087-A15-27D (State Farm Policy B), which insured a 2017 Lincoln MKC. Docket 10 ¶ 71; Docket 10-29 at 1-2. At the time of the accident, Tveter was unaware that she was a named insured on either State Farm Policy A or State Farm Policy B. Docket 10 ¶ 19.

In the months following the accident, Tveter sought to determine how her property damage and medical bills were to be paid through communications with State Farm and her medical providers. *Id.* ¶¶ 26-37. Around October 1, 2021, Kristi Tedrow, a claim representative for State Farm, provided Tveter with a claim number and told Tveter that the injury was covered by State Farm. *Id.* ¶ 26. Tedrow later sent Tveter a letter indicating that State Farm had not received any medical bills from the accident and asking Tveter to provide those bills to State Farm. *Id.* ¶ 28.

Tveter thereafter discovered that Fall River Health Services had initially billed Tveter's health insurance company, United Healthcare, for its services. *Id.* ¶ 30. On January 11, 2022, Tveter spoke to Cindy Erb, a Regional West Garden County Hospital billing department employee, and explained that the services provided on September 9, 2021, were accident-related and should have been billed to State Farm instead of United Healthcare. *Id.* Erb indicated that she would submit the entire claim to State Farm. *Id.*

On July 13, 2022, Tveter contacted Paige Montgomery, a Fall River County Hospital billing department employee, about submitting the $17,213.31

medical bill to State Farm. *Id.* ¶ 34. Montgomery indicated that she would submit the bill to State Farm. *Id.* When Tveter later followed up with Montgomery, she stated that she had not yet received payment from State Farm "because we have to wait for United Healthcare to take back their payment then we bill State Farm." *Id.*; Docket 10-23 at 3.

On September 12, 2022, Tedrow told Tveter that State Farm had not received a lien from United Healthcare or medical bills from Fall River County Health Services or Regional West Garden County Hospital. Docket 10 ¶ 35. Tveter claims Tedrow stopped returning Tveter's phone calls after this conversation. *Id.* ¶ 36.

On June 26, 2023, the Credit Collections Bureau sent Tveter a letter indicating that it was attempting to collect $17,213.31 for the Fall River Health Services bill. Docket 10 ¶ 38; Docket 10-26. Tveter thereafter submitted a demand for damages to State Farm, incorporating her Fall River Health Services medical bills and the ambulance bill from Hot Springs Ambulance Services. Docket 10 ¶ 40. Tedrow sent Tveter a letter explaining that State Farm could not respond to the demand because it did not have the records from Regional West Garden County Hospital. *Id.* ¶ 41. Tedrow later sent another letter advising Tveter that State Farm had paid Tveter's property damage claim to Progressive, the insurance carrier for the 2015 motorcycle she was driving at the time of the accident. *Id.* ¶ 42; Docket 10-28.

On November 14, 2023, Tveter commenced a lawsuit against Stefka in state court, alleging that Stefka was negligent for causing the accident. Docket

10 ¶ 48-49. After service of the complaint, Stefka tendered his defense to State Farm, and an attorney was retained to defend him in that action under State Farm Policy A. *Id.* ¶ 50; *see* Docket 10-31 at 18-19.

Tveter contends that Stefka and Stefka's defense counsel failed to properly identify or produce State Farm Policy A or State Farm Policy B during discovery in the state case. Docket 10 ¶¶ 53-63, 70-71. Tveter alleges that she first learned that she was a named insured on State Farm Policy A during a mediation for the state case on September 18, 2025. *Id.* ¶ 64. On September 30, 2025, Tveter claims Stefka's counsel advised her that she was also a named insured on State Farm Policy B. *Id.* ¶¶ 70-72.

Based on the above allegations, Tveter filed a complaint against State Farm on January 29, 2026, alleging causes of actions for breach of contract, breach of the implied duty of good faith, first-party and third-party bad faith, fraud/deceit, intentional infliction of emotional distress, negligent infliction of emotional distress, and conversion. Docket 1. On March 10, 2026, State Farm moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Docket 7. Tveter thereafter moved to amend her complaint and filed a first amended complaint on March 30, 2026, which added a cause of action for civil conspiracy. Docket 9; Docket 10. On April 13, 2026, State Farm moved to dismiss the first amended complaint. Docket 13. Tveter again moved to amend her complaint on May 4, 2026, and filed a second amended complaint on May 5. Docket 15; Docket 18.

**DISCUSSION**

## I. Status of Pending Motions

Currently, Tveter has two pending motions to amend her complaint (Docket 9; Docket 15), and State Farm has two pending motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Docket 7; Docket 13). State Farm's first motion to dismiss was filed on March 10, 2026, in relation to Tveter's original complaint. Docket 7. On March 30, 2026, Tveter filed her first motion to amend her complaint (Docket 9) and her first amended complaint (Docket 10) as a matter of course under Federal Rule of Civil Procedure 15(a)(1).

If a pleading requires a responsive pleading, "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), . . . whichever is earlier." Fed. R. Civ. P. 15(a)(1). Because Tveter's motion was filed prior to the expiration of the 21-day period, her first motion to amend her complaint was procedurally proper. Thus, Tveter's first motion to amend her complaint (Docket 9) is granted.

"When an amended complaint is filed, the effect is to supersede the original complaint, rendering the original complaint of no legal effect." *Cup O'Dirt LLC v. Badlands Airtime, LLC*, 4:19-CV-04031-KES, 2021 WL 680173, at *12 (D.S.D. Feb. 22, 2021). "[A]s a general proposition, if a defendant files a [m]otion to [d]ismiss, and the plaintiff later files an [a]mended [c]omplaint, the amended pleading renders the defendant's [m]otion to [d]ismiss moot." *OPD*

*Holdings, LLC v. Otiko*, 4:17-CV-04042-KES, 2018 WL 11237900, at *3 (D.S.D. Jan. 26, 2018) (citation omitted); *see also Balvin v. Am. Fam. Mut. Ins. Co.*, 19-CV-04153-LLP, 2020 WL 3608348, at *2 (D.S.D. July 2, 2020) ("The Eighth Circuit Court of Appeals has stated that a motion to amend a complaint may moot a pending motion to dismiss.").

Here, Tveter's first amended complaint differs substantially from her original complaint. *Compare* Docket 1 *with* Docket 10. Tveter's first amended complaint adds many new facts related to her existing claims and a new claim for civil conspiracy. *See* Docket 10 (amendments highlighted in yellow). Because State Farm's first motion to dismiss was filed in relation to Tveter's original complaint, and Tveter's first amended complaint substantially alters her allegations, State Farm's first motion to dismiss (Docket 7) is denied as moot.

Thus, the court will consider the merits of the remaining motions—Tveter's second motion to amend (Docket 15) and State Farm's second motion to dismiss (Docket 13).

## II. Insurance Coverage

Underlying both Tveter's second motion to amend and State Farm's second motion to dismiss is the issue of Tveter's insurance coverage under State Farm Policy A and State Farm Policy B. Docket 14 at 6-13; Docket 10 ¶¶ 74-168. In her first and second amended complaints, Tveter alleges that State Farm engaged in conduct to prevent her from asserting insurance claims and recovering under those policies. Docket 10 ¶¶ 74-168; Docket 18 ¶¶ 74-

173. And in State Farm's second motion to dismiss, it alleges that Tveter cannot state a plausible claim for relief because she does not qualify for coverage under either policy. Docket 14 at 6-13.

Tveter attached State Farm Policy A and State Farm Policy B to her first and second amended complaints. Docket 10-31; Docket 10-29; Docket 18-31; Docket 18-29. Thus, the court may consider them in determining whether Tveter has stated a plausible claim for relief. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010) ("[D]ocuments attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes,' Fed. R. Civ. P. 10(c), including to determine whether a plaintiff has stated a plausible claim[.]"). As such, the court first examines whether Tveter qualifies for coverage under State Farm Policy A or State Farm Policy B.

**A. State Farm Policy A**

At the time of the accident, the 2018 motorcycle driven by Stefka was insured under State Farm Policy A. Docket 10-31 at 2. State Farm Policy A listed both Stefka and Tveter as named insured drivers. *Id.* at 1-2. The policy had liability limits of $500,000 each person and $500,000 each accident for bodily injury coverage and $100,000 each accident for property damage coverage. *Id.* at 2. The policy also had comprehensive coverage and collision coverage for physical damage. *Id.* Additionally, the policy had UM and UIM coverage of $100,000 each person and $300,000 each accident. *Id.* State Farm Policy A did not have medical payments coverage. *Id.*

For liability coverage, State Farm Policy A provides that State Farm will pay "damages an insured becomes legally liable to pay[,]" "attorney fees for attorneys chosen by [State Farm] to defend an insured who is sued for such damages[,]" and "court costs charged to an insured and resulting from that part of a lawsuit[.]" *Id.* at 19 (emphasis omitted). Tveter does not allege in either her first or second amended complaint that she is legally liable to pay damages or that she has been sued for such damages. *See generally* Docket 10; Docket 18. Thus, Tveter does not have a claim for liability coverage under State Farm Policy A.

As far as physical damages coverage, State Farm Policy A provides that State Farm will pay comprehensive coverage "for loss, except loss caused by collision, to a covered vehicle[.]" *Id.* at 33 (emphasis omitted). Additionally, the policy provides that State Farm will pay collision coverage "for loss caused by collision to a covered vehicle." *Id.* at 34 (emphasis omitted). The policy also provides that "[l]oss [c]aused by [c]ollision means a loss caused by[] a covered vehicle hitting or being hit by another vehicle or other object[.]" *Id.* at 33 (emphasis omitted). Because Tveter alleges the loss was caused by collision, *see* Docket 10 ¶ 13; Docket 18 ¶ 13, she does not have a claim under State Farm Policy A for comprehensive coverage. And although Tveter does have a claim for collision coverage for the 2015 motorcycle, Tveter acknowledged in her first and second amended complaints that State Farm paid that claim to Progressive, the carrier of the insurance policy for that motorcycle. Docket 10 ¶ 42; Docket 18 ¶ 42; Docket 10-28.

As for UM and UIM coverage, State Farm Policy A provides that State Farm will pay "compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an" uninsured or underinsured motor vehicle. Docket 10-31 at 26, 30 (emphasis omitted). In her first and second amended complaints, Tveter alleges that Stefka was the sole cause of Tveter's injuries. Docket 10 ¶ 109; Docket 18 ¶ 109. But Tveter does not allege in either complaint that the 2018 motorcycle driven by Stefka at the time of the accident met the definition of uninsured or underinsured motor vehicle within State Farm Policy A. *See generally* Docket 10; Docket 18. Additionally, State Farm Policy A specifically provides that "uninsured motor vehicle" and "underinsured motor vehicle" do "not include a land motor vehicle . . . whose ownership, maintenance, or use is provided [l]iability [c]overage by this policy[.]" Docket 10-31 at 26, 30. And the 2018 motorcycle driven by Stefka at the time of the accident is provided liability coverage under State Farm Policy A. *Id.* at 2. Thus, Tveter does not have a claim for UM or UIM coverage under State Farm Policy A. As such, except for the claim for collision coverage that was already paid by State Farm, Tveter does not have a claim for any other coverage under State Farm Policy A.

**B. State Farm Policy B**

State Farm Policy B insures a 2017 Lincoln MKC, which was not involved in the accident. Docket 10-29 at 2. State Farm Policy B lists both Elizabeth Orr and Tveter as named insured drivers. *Id.* at 1-2. The policy has liability limits of $250,000 each person and $500,000 each accident for bodily injury coverage

and $100,000 each accident for property damage coverage. *Id.* at 2. The policy also has comprehensive coverage, collision coverage, emergency road service coverage, and car rental and travel expenses coverage for physical damages. *Id.* Additionally, the policy has UM and UIM coverage of $250,000 each person and $500,000 each accident. *Id.* State Farm Policy B also provides $25,000 each person for medical payments coverage. *Id.*

State Farm Policy B provides the same insuring agreement terms as State Farm Policy A regarding liability coverage, comprehensive coverage for physical damages, UM coverage, and UIM coverage. *Id.* at 13, 20-21, 24, 27-28. Thus, Tveter does not have a claim for liability, comprehensive coverage for physical damages, UM, or UIM coverage under State Farm Policy B for the same reasons she does not have a claim for that coverage under State Farm Policy A.

As for medical payments coverage, State Farm Policy B provides that State Farm will pay "medical expenses incurred because of bodily injury that is sustained by an *insured* and caused by a motor vehicle accident" under certain circumstances. *Id.* at 17 (some emphasis omitted). But State Farm Policy B also defines "insured" for the purposes of medical payments coverage as:

> 1. you and resident relatives:
>    a. while occupying:
>       (1) your *car*;
>       (2) a newly acquired *car*;
>       (3) a temporary substitute *car*;
>       (4) a non-owned *car*; or
>       (5) a trailer while attached to a *car* described in (1), (2), (3), or (4) above[.]

*Id.* at 16 (some emphasis omitted). And the policy also provides that "car" means "a land motor vehicle with four or more wheels[.]" *Id.* at 11. Because Tveter alleges she was occupying a three-wheeled motorcycle at the time of the accident, Docket 10 ¶ 12; Docket 18 ¶ 19, she does not meet the definition of "insured" for the purposes of medical payments coverage. As such, Tveter does not have a claim for medical payments coverage under State Farm Policy B.

For collision coverage for physical damages, State Farm Policy B provides that State Farm will pay "for loss caused by collision to a covered vehicle." Docket 10-29 at 28 (emphasis omitted). And the policy also provides that State Farm will pay emergency road service coverage in the form of labor for repairs, towing for repairs, delivery of materials for repairs, and labor for locksmith services for a "covered vehicle." *Id.* But the policy defines "covered vehicle" as:

> 1. your *car*;
> 2. a newly acquired *car*;
> 3. a temporary substitute *car*;
> 4. a *camper* that is designed to be mounted on a pickup truck and shown on the Declarations Page;
> 5. a non-owned *car* . . . ; and
> 6. a non-owned *trailer* and a non-owned *camper* while it is being used by an insured[.]

*Id.* at 27 (some emphasis omitted). And as previously stated, the policy provides that "car" means "a land motor vehicle with four or more wheels[.]" *Id.* at 11. Because the 2015 three-wheel motorcycle Tveter was driving at the time of the accident does not meet the definition of "covered vehicle" under State Farm Policy B, Tveter does not have a claim for collision coverage for physical damages or emergency road service coverage under that policy.

As for car rental and travel expenses coverage, State Farm Policy B provides that State Farm will pay that coverage if the expense is "a result of a loss which would be payable under [c]omprehensive [c]overage or [c]ollision [c]overage." *Id.* at 28 (emphasis omitted). Because Tveter does not have a claim for comprehensive or collision coverage under State Farm Policy B, she cannot make a claim for car rental and travel expenses coverage. Thus, Tveter is not eligible for any coverage under State Farm Policy B.

## III. Motion to Amend Complaint

"A plaintiff may amend a complaint once as a matter of course within 21 days after serving it or within 21 days after service by the defendant of either a responsive pleading or a Rule 12(b) motion to dismiss." *Next Level Tech. Grp., LLC v. Wehde Enters., LLC*, 4:24-CV-04199-KES, 2025 WL 1184078, at *2 (D.S.D. Apr. 23, 2025). "Otherwise, a plaintiff may amend a complaint only 'with the opposing party's written consent or the court's leave.' " *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). "But a party is only entitled to a single 21-day period for amending as a matter of course." *Id.* (citation omitted).

In her second motion to amend, Tveter asserts that she has "the right to amend her [f]irst [a]mended [c]omplaint 'as a matter of course' pursuant to F.R.C.P. 15(a)(1)(B) without securing [State Farm]'s written consent or seeking leave of the [c]ourt" because her "requested second amendment was filed before the expiration of time in the Rule, but after service of [State Farm]'s motion to dismiss on April 13, 2026." Docket 15 at 2. But "[t]he 21-day periods to amend once as a matter of course . . . are not cumulative. If a responsive pleading is

served after one of the designated motions is served, for example, there is no new 21-day period." Fed. R. Civ. P. 15(a)(1), advisory committee's note to 2009 amendment. Thus, Tveter cannot file a second motion to amend her complaint without securing State Farm's written consent or seeking leave of the court.

But "[t]he failure to file a formal motion to amend a complaint 'is not necessarily fatal as long as [the plaintiff] show[s] a willingness to amend the complaint.' " *GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1036 (8th Cir. 2022) (quoting *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir. 1999)). "A plaintiff may show its willingness to amend by indicating the substance of the proposed amendment to the district court." *Next Level Tech. Grp., LLC*, 2025 WL 1184078, at *3 (citation modified).

Tveter has done more than merely request leave to amend her complaint. Tveter has actually filed her second amended complaint. Docket 18. In doing so, Tveter has provided "the substance of the proposed amendment to the district court." *Next Level Tech. Grp., LLC*, 2025 WL 1184078, at *4 (citation omitted). And in that second amended complaint, Tveter has taken steps to address some of the issues raised in State Farm's second motion to dismiss. *See* Docket 18 (amendments highlighted in green). Additionally, in her reply brief, Tveter specifically stated that she was alternatively seeking to amend her complaint under Rule 15(a)(2). Docket 21 at 6. Thus, the court finds that Tveter has shown a willingness to amend, and even though Tveter failed to seek State Farm's written consent or the court's leave, the court construes Tveter's motion to amend as a motion for leave to amend her original complaint.

In considering a motion for leave to amend, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But "plaintiffs do not have an absolute or automatic right to amend." *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). "Futility is a valid basis for denying leave to amend." *Id.*

Tveter argues her motion for leave to amend should be granted because the second amended complaint causes no prejudice to State Farm, the amendments are not futile, and the ends of justice so require. Docket 21 at 7-9. State Farm asserts that the motion should be denied because Tveter's amendments are futile. Docket 20 at 3-6.

"An amendment is futile if 'the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.' " *Cup O'Dirt LLC*, 2021 WL 680173, at *5 (quoting *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "In this analysis, the court assumes that all facts asserted in the complaint are

true and construes all reasonable inferences from those facts in a light most favorable to the complainant." *OPD Holdings, LLC*, 2018 WL 11237900, at *5. "The court may also 'consider those materials that are necessarily embraced by the pleadings.' " *Cup O'Dirt LLC*, 2021 WL 680173, at *5 (quoting *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 998 (8th Cir. 2016)). And "[b]ecause this case arises under diversity jurisdiction, this court must apply state substantive law and federal procedural law." *Id.*

Aside from mere clerical amendments, Tveter's second amended complaint provides amendments to two causes of action alleged in her first amended complaint. *Compare* Docket 10 *with* Docket 18. First, Tveter amends a factual paragraph relating to her claim for breach of contract. Docket 18 ¶ 19. Second, Tveter amends a couple of paragraphs relating to her civil conspiracy claim. *Id.* ¶¶ 167-68, 173.

**A. Breach of Contract**

"The elements of a breach of contract claim under South Dakota law are: (1) an enforceable promise; (2) a breach of the promise; and (3) resulting damages." *OPD Holdings, LLC*, 2018 WL 11237900, at *7. State Farm claims that Tveter's amendments in her second amended complaint relating to her breach of contract claim are futile because Tveter still fails to allege facts supporting the existence of a breach. Docket 20 at 4.

In Tveter's first amended complaint, she alleged that State Farm breached its contractual duties by failing to provide her coverage following the motorcycle accident. Docket 10 ¶¶ 74-98. State Farm thereafter filed its second

motion to dismiss, arguing, among other things, that Tveter is not entitled to medical payments coverage under State Farm Policy B because (1) Tveter owned the motorcycle she was driving at the time of the accident and (2) the motorcycle did not meet the definition of "car" under State Farm Policy B. Docket 13 at 6-8. In response, in her second amended complaint, Tveter clarified that the motorcycle she was driving at the time of the accident was "owned only by Mark and Laurie Soper[.]" Docket 18 ¶ 19. State Farm argues that the amendment is futile because the motorcycle still fails to meet the definition of "car" within State Farm Policy B. Docket 20 at 4.

As previously explained, the 2015 motorcycle driven by Tveter at the time of the accident does not meet the definition of "car" under State Farm Policy B. And aside from the physical damages coverage already paid by State Farm, Tveter was not eligible for any other coverage under either State Farm Policy A or State Farm Policy B. Thus, Tveter has failed to show that State Farm breached its promises in the insurance policies or that any such breach resulted in Tveter's alleged damages. As such, Tveter's amendments in her second amended complaint relating to the breach of contract claim are futile, and the motion to amend is denied as to those amendments.

**B. Civil Conspiracy**

Under South Dakota law, "[a] civil conspiracy is, fundamentally, an agreement to commit a tort." *Kirlin v. Halverson*, 758 N.W.2d 436, 455 (S.D. 2008) (citation omitted). The elements of civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the

object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Id.* (citation omitted). "This is not an independent cause of action, but is 'sustainable only after an underlying tort claim has been established.' " *Id.* (citation omitted) (emphasis omitted).

In her first amended complaint, Tveter alleged State Farm conspired with Stefka, counsel for Stefka, and Stefka's counsel's law firm to commit fraud/deceit, conversion, and unlawful violations of statutory unfair insurance claims practices. Docket 10 ¶¶ 162-67. State Farm thereafter filed its second motion to dismiss, arguing that Tveter "failed to allege any damage resulting from the alleged conspiracy." Docket 14 at 25. In response, in her second amended complaint, Tveter added that the alleged civil conspiracy resulted in damages, "including but not limited to insurance coverage benefits and limits, declaration of [Tveter's] status as a named insured, physical impact and emotional distress and anxiety, worry, confusion, mental anguish, loss of peace of mind, loss of the sanctity of mind, body and spirit, are in an amount in excess of $1,000,000." Docket 18 ¶ 173.

But as explained above, Tveter was not eligible for any coverage under State Farm Policy A or State Farm Policy B. Thus, Tveter has failed to allege facts to establish damages as a proximate result of the conspiracy. As such, Tveter's amendments in her second amended complaint relating to the civil conspiracy claim are futile, and the motion to amend is denied.

Based on the above, Tveter's second motion to amend (Docket 15) is denied, and Tveter's first amended complaint (Docket 10) is the operative complaint for the purposes of State Farm's second motion to dismiss (Docket 13).

**IV. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

State Farm moves to dismiss Tveter's first amended complaint under Federal Rule of Civil Procedure 12(b)(6) because Tveter failed to state a claim upon which relief can be granted. Docket 13. As stated above, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"In this analysis, the court assumes that all facts asserted in the complaint are true and construes all reasonable inferences from those facts in a light most favorable to the complainant." *OPD Holdings, LLC*, 2018 WL 11237900, at *5. "The court may also 'consider those materials that are necessarily embraced by the pleadings.' " *Cup O'Dirt LLC*, 2021 WL 680173, at *5 (quoting *Hughes*, 840 F.3d at 998). And "[b]ecause this case arises under

diversity jurisdiction, this court must apply state substantive law and federal procedural law." *Id.*

**A. Breach of Contract and Civil Conspiracy**

As previously stated, Tveter fails to state a plausible claim for relief for breach of contract because she has not alleged facts to establish the existence of a breach or that any such breach caused Tveter's alleged damages. Additionally, as stated above, Tveter fails to state a plausible claim for relief for civil conspiracy because she has not alleged facts to establish damages that were proximately caused by the alleged conspiracy. Thus, State Farm's motion to dismiss is granted as to Tveter's claims for breach of contract and civil conspiracy.

**B. Breach of Implied Duty of Good Faith**

In her first amended complaint, Tveter argues that State Farm breached its implied duty of good faith by concealing Tveter's status as a named insured under State Farm Policy A and State Farm Policy B and denying Tveter's insurance claims. Docket 10 ¶ 101. State Farm argues that Tveter's claim for breach of the implied duty of good faith should be dismissed because the claim is not a stand-alone action. Docket 14 at 13. Additionally, State Farm alleges that the claim should be dismissed because the duty of good faith arises from contract obligations and Tveter has not alleged any contractual performance obligations owed by State Farm. *Id.* at 14. Tveter responds that her first amended complaint does allege that State Farm owed contractual performance

obligations of physical damages coverage and medical payments coverage under State Farm Policy A and State Farm Policy B. Docket 17 at 12-14.

South Dakota law recognizes that "[e]very contract contains an implied covenant of good faith and fair dealing that prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract." *Zochert v. Protective Life Ins. Co.*, 921 N.W.2d 479, 486 (S.D. 2018) (quoting *Schipporeit v. Khan*, 775 N.W.2d 503, 505 (S.D. 2009)). "Lack of good faith may be evidenced by various conduct, such as 'evasion of the spirit of the deal; abuse of power to determine compliance; and[] interference with or failure to cooperate in the other party's performance.' " *Id.* at 487 (quoting *Garrett v. Bankwest, Inc.*, 459 N.W.2d 833, 845 (S.D. 1990)).

But South Dakota generally "does not recognize an independent [tort] for breach of the implied covenant of good faith and fair dealing." *E&I Global Energy Servs., Inc. v. Liberty Mutual Surety Co.*, 4:20-CV-04033-KES, 2020 WL 13429353, at *3 (D.S.D. Dec. 18, 2020) (alteration in original) (quoting *Schipporeit*, 775 N.W.2d at 505). As an exception to that general rule, South Dakota law recognizes "an insured's ability to seek punitive damages for bad faith as an incident of the special relationship between the insurer and the insured[.]" *Id.* at *4 (alteration in original) (quoting *Zochert*, 921 N.W.2d at 490). "Thus, a plaintiff may not bring a claim asserting breach of the covenant of good faith and fair dealing as an independent tort claim unless the plaintiff is an insured seeking recovery against the insurer." *Id.*

Here, Tveter is a named insured under both State Farm Policy A and State Farm Policy B. Docket 10-31; Docket 10-29. And she is seeking recovery under those policies against State Farm, the insurer. *See generally* Docket 10. Thus, under South Dakota law, Tveter is permitted to bring an independent tort claim for breach of the implied duty of good faith. But Tveter has not alleged facts establishing a breach of the implied duty of good faith. As explained above, Tveter was not entitled to any payment under either State Farm Policy A or State Farm Policy B. Thus, State Farm did not prevent or injure Tveter's right to receive the agreed benefits under those policies. As such, State Farm's motion to dismiss is granted as to Tveter's breach of the implied duty of good faith claim.

**C. First-Party and Third-Party Bad Faith**

"[I]nsurance bad faith actions are classified as either first-party or third-party claims." *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 700 (S.D. 2011). In her first amended complaint, Tveter makes a claim for both first-party and third-party bad faith under the same facts. Docket 10 ¶¶ 105-13. Tveter alleges that State Farm engaged in bad faith by concealing Tveter's status as a named insured on State Farm Policy A and State Farm Policy B and denying coverage without a reasonable basis. *Id.* ¶¶ 106, 109-10.

"A claim of first-party bad faith is an intentional tort[.]" *Harvieux v. Progressive N. Ins. Co.*, 915 N.W.2d 697, 701 (S.D. 2018). "A first-party coverage situation arises when an insurance company contracts to pay benefits directly to an insured." *Bertelsen*, 796 N.W.2d at 700. "First party bad faith

occurs 'when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured.' " *Id.* (quoting *Hein v. Acuity*, 731 N.W.2d 231, 235 (S.D. 2007)). "In order to be successful on a claim of [first-party] bad faith, a plaintiff must prove: '(1) an absence of a reasonable basis for denial of policy benefits, and (2) the insurer's knowledge of the lack of a reasonable basis for denial.' " *Harvieux*, 915 N.W.2d at 701 (quoting *Mordhorst v. Dakota Truck Underwriters & Risk Admin. Servs.*, 886 N.W.2d 322, 324 (S.D. 2016)).

State Farm argues that Tveter's claim for first-party bad faith should be dismissed because Tveter "has not alleged facts showing that she has presented a claim for first-party benefits, that she would be entitled to first-party benefits, or that State Farm denied her claim for first-party benefits." Docket 14 at 15. The court agrees. As previously explained, Tveter has not alleged facts showing that she was entitled to recover first-party benefits under State Farm Policy A or State Farm Policy B. Nor has she alleged facts to show that State Farm unreasonably denied her benefits under either policy. Thus, Tveter has failed to state a claim for first-party bad faith.

"Third-party bad faith is 'based on principles of negligence[.]' " *Johnson v. United Parcel Serv., Inc.*, 946 N.W.2d 1, 9 (S.D. 2020) (quoting *Hein*, 731 N.W.2d at 235). "[A] third-party coverage situation arises when an insurance company contracts to indemnify an insured against liability to third parties." *Bertelsen*, 796 N.W.2d at 700. "And third-party bad faith occurs 'when an insurer breaches its duty to give equal consideration to the interests of its

insured when making a decision to settle a case' brought against its insured by a third party." *Id.* (quoting *Hein*, 731 N.W.2d at 235).

State Farm argues that Tveter's claim for third-party bad faith should be dismissed because Tveter is not an "insured" to be indemnified by State Farm for liability to third parties. Docket 14 at 15. The court agrees. Tveter does not allege that a third-party has filed suit against her for damages stemming from the accident. *See generally* Docket 10. Rather, Tveter's first amended complaint alleges that Stefka was the sole cause of the accident and that Tveter filed suit against Stefka for his role in that accident. *Id.* ¶¶ 43, 109. Thus, Stefka is the only party insured under either policy who is currently eligible to bring a third-party bad faith claim against State Farm. As such, Tveter has failed to state a plausible claim for third-party bad faith, and State Farm's motion to dismiss is granted as to Tveter's claims for bad faith.

**D. Fraud/Deceit**

Tveter's first amended complaint alleges that State Farm made misrepresentations regarding her status as an insured on State Farm Policy A and State Farm Policy B, which induced her to make other arrangements for insurance claims and caused damages. *Id.* ¶¶ 117, 119, 123. State Farm argues that Tveter's fraud and deceit claim should be dismissed because Tveter has failed to allege facts to support that she relied on the alleged misrepresentations or that she sustained injury or damage as a result of that reliance. Docket 14 at 23. Tveter replies that her "forbearance in making a direct claim to [State Farm] is an indication of her reliance upon [State Farm]'s

fraud and deceit." Docket 17 at 27-28. Additionally, Tveter replies that State Farm's fraud and deceit caused damage because she was not able to collect $25,000 in medical payments coverage or the first-party benefits for physical damages. *Id.* at 29.

South Dakota law provides that the elements of fraud and deceit are:

> That a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with the intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it and was induced thereby to act to his injury or damage.

*Stabler v. First State Bank of Roscoe*, 865 N.W.2d 466, 477 (S.D. 2015) (citation omitted); *Delka v. Continental Cas. Co.*, 748 N.W.2d 140, 151-52 (S.D. 2008) (citation omitted).

Here, as previously explained, Tveter did not have a claim to any medical payments coverage under State Farm Policy A or State Farm Policy B. Nor did Tveter have a claim to any physical damages coverage under either policy, except for the claim State Farm already paid. Thus, Tveter's first amended complaint fails to allege facts to show that State Farm's actions caused the damages she alleges. As such, State Farm's motion to dismiss is granted as to Tveter's claim for fraud and deceit.

**E. Intentional Infliction of Emotional Distress**

In her first amended complaint, Tveter alleges that State Farm engaged in extreme and outrageous conduct by intentionally concealing information regarding Tveter's status as a named insured on State Farm Policy A and State Farm Policy B and denying her claims for payment of her medical bills. Docket

10 ¶ 128. Tveter alleges that this extreme and outrageous conduct resulted in "an extreme disabling emotional response." *Id.* ¶ 134.

Under South Dakota law, the elements of intentional infliction of emotional distress are:

> (1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause-in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

*Estate of Johnson v. Weber*, 898 N.W.2d 718, 726 (S.D. 2017) (quoting *Fix v. First State Bank of Roscoe*, 807 N.W.2d 612, 618 (S.D. 2011)).

"For conduct to be 'outrageous,' it must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Richardson v. E. River Elec. Power Coop.*, 531 N.W.2d 23, 27 (S.D. 1995)). "The determination of outrageous conduct by the defendant is initially for the court." *Tibke v. McDougall*, 479 N.W.2d 898, 907 (S.D. 1992); *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (A.L.I. 1965) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.).

Tveter has not alleged in her first amended complaint that State Farm intended to cause Tveter severe emotional distress. And even if she had, State Farm's conduct cannot be said to have been so extreme as to go beyond all possible bounds of decency. Thus, Tveter has failed to state a plausible claim

for relief for intentional infliction of emotional distress, and State Farm's motion to dismiss is granted as to that claim.

**F. Negligent/Reckless Infliction of Emotional Distress**

In her first amended complaint, Tveter alleges that State Farm engaged in extreme and outrageous conduct by negligently and/or recklessly misleading Tveter into believing that her sole and exclusive insurance benefits would be confined to a $25,000 bodily injury policy and property damages coverage under the Progressive Policy and by negligently and/or recklessly denying Tveter's claims for payment of her medical bills. Docket 10 ¶ 139. Tveter contends that State Farm's conduct caused her to suffer severe emotional distress. *Id.* ¶¶ 140-41.

"The first element in a claim for [negligent infliction of emotional distress] is that the defendant engaged in the negligent conduct." *Blaha v. Stuard*, 640 N.W.2d 85, 90 (S.D. 2002). "Negligence is the breach of a legal duty imposed by statute or common law." *Id.* (quoting *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 14 (S.D. 1988)). "The three necessary elements of actionable negligence are: (1) A duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *Id.* (quoting *Stevens*, 426 N.W.2d at 14).

Tveter does not allege in her first amended complaint that State Farm owed her a duty or failed to perform such a duty with regard to her claim for negligent infliction of emotional distress. *See* Docket 10 ¶¶ 138-141. And to the extent that Tveter makes those claims elsewhere in her first amended

complaint, as previously explained, Tveter has not alleged facts to establish the existence of any breach on behalf of State Farm. Additionally, as stated above, Tveter did not have a claim to any further coverage under State Farm Policy A or State Farm Policy B. Thus, Tveter has not alleged facts showing that the claimed injuries resulted from State Farm's alleged failures. Thus, Tveter has failed to state a plausible claim for relief for negligent infliction of emotional distress, and State Farm's motion to dismiss as to that claim is granted.

### G. Conversion

In her first amended complaint, Tveter alleges that State Farm exercised dominion or control over her interest in State Farm Policy A and State Farm Policy B that deprived her of her interest in the policies by concealing information regarding her status as a named insured on those policies. *Id.* ¶¶ 146, 148-49, 155, 157. Tveter contends that State Farm's actions caused injury because they "materially delayed [Tveter] from timely access to her property interests for years after the accident[]" and Tveter otherwise "would have presented policy claims to [State Farm] years earlier; thereby negating the need to bring suit against [Tveter]'s ex-husband." *Id.* ¶¶ 148, 150-51, 157, 164.

"Conversion is the unauthorized exercise of control or dominion over personal property in a way that repudiates an owner's right in the property or in a manner inconsistent with such right." *W. Consol. Co-op v. Pew*, 795 N.W.2d 390, 396 (S.D. 2011) (citation omitted). The elements of conversion are:

> (1) [plaintiff] owned or had a possessory interest in the property; (2) [plaintiff's] interest in the property was greater than the [defendant's]; (3) [defendant] exercised dominion or control over or

> seriously interfered with [plaintiff's] interest in the property; and (4) such conduct deprived [plaintiff] of its interest in the property.

*Id.* (alterations in original) (citation omitted). "[T]he foundation for a conversion action 'rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff *from which injury to the latter results.*' " *Nelson v. Tinkcom*, 24 N.W.3d 725 (S.D. 2025) (alteration in original) (emphasis added) (citation omitted). Thus, "[d]amages are a basic prerequisite to recovery on a conversion theory." *Fin-Ag, Inc. v. Pipestone Livestock Auction Mkt., Inc.*, 754 N.W.2d 29, 46 (S.D. 2008).

As previously explained, Tveter did not have a claim to any further payment under State Farm Policy A or State Farm Policy B. Thus, State Farm's actions neither materially delayed Tveter's access to her interest in those policies nor caused her to unnecessarily bring suit against her ex-husband. As such, Tveter has failed to state a plausible claim for relief for conversion, and State Farm's motion to dismiss as to that claim is granted.

**CONCLUSION**

Based on the above, it is ORDERED:

1. That Tveter's first motion to amend (Docket 9) is granted.

2. That State Farm's first motion to dismiss (Docket 7) is denied as moot.

3. That Tveter's second motion to amend (Docket 15) is denied.

4. That State Farm's second motion to dismiss (Docket 13) is granted.

5. That Tveter's first amended complaint (Docket 10) is dismissed with prejudice.

DATED October 7, 2026

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE